UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DISTRICT

| | |
|---|---|
| Pamela Stroud, *as Personal Representative of the Estate of Victor Rogers,*<br><br>Plaintiff,<br><br>vs.<br><br>South Carolina Department of Corrections, and Director Bryan Stirling, *in his individual and official capacities,* Lefford Fate, *in his individual and official capacities,* Kennard Dubose, *in his individual and official capacities,* Beverly Wood, *in her individual and official capacities,* Warden Cecelia Reynolds, *in her individual and official capacities,* James Kenya Austin, *in his individual capacity, Ivan Daly, in his individual capacity, Bernice* Brown, *in her individual capacity,* Jessica Brown, *in her individual capacity,* Christopher Nobles, *in his individual capacity,* Lavern Hickson, *in his individual capacity,* Candi Nicole Bowen, *in her individual capacity,* Lavern Epps, *in his individual capacity,* MedFirst Staffing, LLC, Kimberly Woodward, *in her individual capacity* Tonya Hubbard, *in her individual capacity* and Elizabeth Brown, *in her individual capacity,*<br><br>Defendants. | Civil Action Number:<br>2:16-cv-02892-CMC-MGB<br><br>**Complaint**<br>**(Jury Trial Demanded)** |

The Plaintiff, Pamela Stroud, *as Personal Representative of the Estate of Victor Rogers*, by and through her attorneys, Elizabeth A. Franklin-Best, E. Charles Grose, Jr., and James H. "Chip" Price III, submit the following complaint against the defendants.

## NATURE OF THE ACTION

1)    This is an action for damages and redress for illegal and unconstitutional actions taken by the South Carolina Department of Correction, and other individuals acting under color

of law that led to Victor Roger's untimely death. Their illegal actions consist of their deliberate indifference to the obvious, serious medical needs of Victor Rogers while he was in their custody and care, and when they owed him a duty of care. These actions were taken in violation of the Constitution of the United States of America, particularly the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, and Roger's Estate, through the personal representative of Pamela Stroud, brings this action for relief pursuant to 42 U.S.C. §1983. She also brings certain causes of action pursuant to the common law of South Carolina.

## JURISDICTION

2)      This is an action for money damages brought pursuant to 42 U.S.C.A. § 1983, *et seq.*, 42 U.S.C. § 12132, *et seq.*, and the Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

3)      Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§1331, 1367(a)(b)(c)(d), and 1343, and 28 U.S.C.A. §§2201 and 2202.

4)      Venue is appropriate pursuant to 28 U.S.C. §1391(b) in that the majority of the acts occurred in Lee County, South Carolina.

## PARTIES

5)      The plaintiff, Pamela Ann Stroud, is a citizen and resident of Greenville County, South Carolina and was duly appointed, on April 23, 2015, by the Probate Court of Greenville County, as Personal Representative of the Estate of Victor Lamont Rogers (Case No. 2015-ES-23-00981). This suit is filed on behalf of the heirs of Victor Lamont Rogers.

6)      The South Carolina Department of Correction (hereinafter "SCDC") is a governmental agency and/or entity existing under the laws of the State of South Carolina and has

2

facilities located throughout the State including Lee County where Lee Correctional Institution (hereinafter "Lee CI") is located.  At all times hereinafter mentioned in this lawsuit, the Defendant SCDC acted and carried on its business by and through its agents, servants, and/or employees at its various locations including Lee CI.  Additionally, these agents, servants, and/or employees (to include and not be limited to the correctional and medical personnel referenced below) were operating within the scope of their officially assigned and/ or compensated duties.

7)      The defendant, Bryan Stirling, is the duly appointed director of the SCDC.  He is sued in his official and individual capacities.

8)       The defendant Lefford Fate is the duly appointed director of medical operations for the SCDC.  He is sued in his official and individual capacities.

9)      The defendant, Kennard Dubose, is the duly appointed Mental Health Director of the Department of Corrections.  Upon information and belief, he has a Masters in Social Work. He is sued in his official and individual capacities.

10)      The defendant, Dr. Beverly Wood, is a physician licensed to practice medicine in the State of South Carolina.  At all times relevant to this complaint, she was employed by the SCDC as the Chief Psychiatrist.  She is sued in her official and individual capacities.

11)      The defendant, Cecelia Reynolds, is the duly appointed Warden of Lee CI.  She is sued in her official and individual capacities.

12)      The defendants, James Kenya Austin, Ivan Daly, Bernice Brown, were correctional officers employed by SCDC at Lee CI at the times relevant to the allegations of this lawsuit.  These defendants are sued in their individual capacity.

13)     The defendant, Tonya Hubbard, is nurse licensed by the State of South Carolina. At all times relevant to this complaint, she was employed by the SCDC.  She is sued in her individual capacity.

14)     The defendant, MedFirst Staffing, LLC is organized under the laws of the State of South Carolina with its principal place of business in Greenville, South Carolina.

15)     The defendants, Elizabeth Brown and Kimberly Woodward, are nurses licensed by the State of South Carolina.  At all times relevant to this complaint, they were employed by MedFirst Staffing, LLC providing medical services to the SCDC at Lee CI.  They are sued in their individual capacities for actions taken under color of state law.

16)     For purposes of the claims asserted under 42 U.S.C. §1983, the above named individuals are being sued in their individual capacities for actions taken under the color of state law.  Upon information and belief, these Defendants had direct contact with the decedent, had direct knowledge of his physical condition (including his need for urgent medical care), and/or supervised other Defendants who had direct contact with the decedent.  Additionally, these Defendants had the obligation and opportunity to secure the appropriate medical and custodial treatment, but consciously failed to do so.  During the time period in question, the decedent's constitutional rights were well established and well known to each of these Defendants, including, but not limited to, his right to appropriate medical care.

**STATEMENT OF FACTS**

17)     Victor Rogers was a healthy, but profoundly mentally ill young man when he entered the South Carolina Department of Corrections to serve his seven-year sentence for Second Degree Burglary, which is classified as non-violent offense.  He was sentenced on February 14, 2013 in Greenville County, South Carolina.

4

18)     At age 27, Victor Rogers died in Cell #34 of the Restricted Housing Unit (hereinafter "RHU") of Lee CI.  The acts, omissions, and occurrences, which give rise to this complaint, occurred at the Lee CI.

19)     When he initially entered the prison system, Victor was placed at Evan Correctional Institution on or around April 3, 2013.  While there, he was placed in solitary confinement where he severely decompensated.  A note from July 26, 2013 indicates that he had been without medications for "several months."

20)     While housed at Evans, Victor was noted as being catatonic.  He defecated and urinated on his food trays.  He was non-verbal.

21)     On October 8, 2013, Victor was involuntarily committed to Gilliam Psychiatric Hospital through Richland County Probate Court.

22)     The discharge summary from Gilliam Psychiatric Hospital noted the following:

a)      It is recommended Inmate Rogers be encouraged to take medications as prescribed in order to maintain mental stability and that staff monitor his medication compliance closely has he has a history of noncompliance leading to decompensation;

b)      It is recommended that he be seen regularly by his psychiatrist for medical evaluations to assess the efficacy of his medication regime;

c)      It is recommended that he receive individual and group counseling to provide him with education about his mental illness and the importance of medication compliance and to monitor his mental status.

d)      It is recommended he be placed in the Intermediate Care Services Program.

23)    Dr. Richard Frierson, a psychiatrist who has a long history with the South Carolina Department of Health and the SCDC, saw Victor at the Gilliam Psychiatric Hospital and specifically indicated that Victor should not be placed in restricted housing because of his high likelihood of decompensating.

24)    Shortly after his discharge from Gilliam Psychiatric Hospital, Victor was transferred to Lee CI, a maximum-security prison.

25)    At the time of his admission to Lee CI, Victor was noted as having been prescribed the following medications:  Tegretol, Cogentin, Remeron, and Seroquel.

26)    Shortly after his arrival at Lee CI, Victor was again placed in solitary confinement (the RHU) where he never should have been housed given his well-documented mental illness history and the specific warning by Dr. Frierson.

27)    A medical notation from the Mental Health Clinic dated March 3, 2015 indicates that Victor began exhibiting "bizarre" behavior.  Victor stated that he was going to "kill himself."  Victor stated that he was hearing voices.  Ms. Rosa L.M. Privette, MA, LPC-S, CACII, CCCIV noted that he presented "as a completely different person than he presented on 2/24/15.  Inmate Rogers behavior was bizarre and inmate Rogers continued looking around the room the entire sessions [sic] as if he were talking with another person."   Based on this encounter, upon information and belief, Victor was placed in Crisis Intervention (hereinafter "CI") and left with "no property, no utensils, finger foods only, strip cell, 15 minute checks, and no blanket."  At some point it appears that Victor's commitment to CI was discontinued based on the recommendation and assessments of counselors, Muldrow, Sharpe, and Williams.  It is not clear from the records provided when he was placed in Cell #34.

28)     On March 10, 2015, Victor had a scheduled mental health appointment with Dr. Beverly Wood.  Her notation into the medical summary system indicates that he missed this appointment because he was "too weak" to make it.  Dr. Wood never followed up.  This was the last noted encounter Victor had with any medical staff until he died.

29)     On March 15, 2015, Lt. Epps noticed that Victor was on the floor of his cell and that he was "not himself."  He informed agents of the South Carolina Law Enforcement Division (hereinafter "SLED") that he reported Victor to medical on March 15th and March 16th and informed them that Victor Rogers needed to be seen.

30)     Sgt. James Kenya Austin was the Sergeant over the RHU and was responsible for transporting inmates to and from medical from 7:00am to 7:00pm on March 16, 2015.  He admitted that someone told him that Victor was "acting weird last week" but initially told SLED agents that he did not have any contact with him on that date.   He admitted that Lt. Epps told him that Victor needed medical help.  Sgt. Austin was noted as being evasive in his interviews with SLED and that he gave two handwritten statements to the agents indicating he had no contact with Victor on March 16, 2105.  These statements were clearly false.  Austin later told SLED agents that he "got busy" and therefore never attended to Victor.

31)     C/O Julie Ann Bryant, on March 16, 2015 at 8:00am, saw Victor on the floor of his cell, in a fetal position, laying in vomit.  Victor could only respond to her in moans.  She notified Sgt. Austin.

32)     Also on March 16, 2015, Cpt. Lavern Hickson saw Victor laying between his cell door and his bed between 7:20-8:00am.  Around 8:10-8:20am, Hickson and Sgt. Austin ordered Victor to get up to be handcuffed, but Victor did not get up.

33)     Around lunchtime on March 16, 2015, Victor told C/O Jessica Brown that he was too weak to stand up.  She stated that she reported this to Sgt. Austin.

34)     Cpt. Lavern Hickson informed SLED that each time he walked by Victor's cell, he was in that same position.

35)     C/O Bernice Brown stated that Victor never stood during her shift that started on 7:00am on March 16, 2015, even when they had "standing count."

36)     C/O Christopher Nobles, on March 16, 2015, placed Victor's dinner tray on the floor next to him.  He stated he does not recall any communication between the two of them. SLED reported in its investigation that Nobles was being evasive in his answers to them.

37)     At approximately 2:30am on March 17, 2015, C/O Bernice Brown discovered that Victor had died.

38)     Inmate Jason Kettler stated that he was moved to the RHU on March 13, 2016 to Unit #33.  He heard Victor, all throughout the weekend, complaining of being cold and sick. One of the officers told Victor to get up and do jumping jacks, but all he did was moan.  Mr. Kettler believes that Victor spent that entire weekend on the floor.

39)     Inmate Brandon Cook, in Unit #35, said he thinks that Victor did not eat for several days.  He said that Victor had been asking for help during the weekend.

40)     Lab Technician Candi Nichole Bowen entered a late entry into the SCDC Health System (after Victor died) indicating that the medical staff was notified around 9:00am on March 16, 2015 that Lt. Epps believed that Victor was having a medical breakdown, was weak, and on the floor.  Lt. Epps was advised to have Victor escorted to medical as soon as he could be seen by the medical staff.

41)    The autopsy report found that Victor died of sepsis, resulting from an untreated kidney infection.

## THE BAXLEY ORDER

42)    On January 8, 2014, the Honorable Michael Baxley, Circuit Court Judge for the State of South Carolina, issued his order in *TR et al. v. SCDC*, Case No. 2005-CP-40-2925 (hereinafter "Baxley Order"), attached as Exhibit 1.  The Baxley Order issued 433 days before Victor died.

43)    Judge Baxley considered whether the mental health conditions of the SCDC constituted "cruel and unusual punishment" because the SCDC acted with "deliberate indifference to serious medical needs of prisoners," a standard set forth in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Citing *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994), Judge Baxley noted, "This deliberate indifference standard contains both an objective and subjective component."  Baxley Order, p. 4.

44)    Judge Baxley made the following factual findings regarding the objective component of the deliberate indifference standard:

a)    The program used by the SCDC for screening and evaluating inmates to identify those in need of medical care "fails to adequately identify and classify those inmates suffering from serious mental illness,[1] thereby exposing them to a substantial risk of serious harm."  Baxley Order, pp. 8-9.

---

[1] For purposes of the Baxley Order "Serious mental illness" was defined

as all SCDC inmates from the date of filing the complaint who have been hospitalized for psychiatric services, referred to an Intermediate Mental Health Care Unit, or diagnosed with the following mental illness:  Schizophrenia, Schizoaffective disorder, Cognitive Disorder, Paranoia, Major Depression, Bipolar Disorder,

b)     Regarding a treatment program that involved more than segregation and close supervision of mentally ill inmates, Judge Baxley found, "The treatment program at SCDC places heavy reliance on segregation and use of physical force against seriously mentally ill inmates, as opposed to treatment."  He further found, "Mentally ill inmates are substantially overrepresented in segregation units know as Special Management Units ("SMU"), with SCDC."  And, "Mentally ill inmates also suffer from disproportionate, unnecessary, and excessive uses of force."  And, "A substantial contributing factor to the lack of an effective treatment program is the limited involvement of psychiatrists in creating and administering treatment plans for mentally ill inmates."  And, "SCDC's treatment program fails to provide mentally ill inmates with sufficient access to higher levels of care."  Judge Baxley concluded:

> This Court finds that SCDC's use of force and segregation, as opposed to treatment, in a mental health system where psychiatrists have limited roles and where inmates face systemic obstacles in accessing higher levels of care, creates a substantial risk of serious harm for inmates with serious mental illness.

Baxley Order, pp. 9-23.

c)     Judge Baxley found, "[T]he mental health program at SCDC is substantially understaffed.  This has a causal effect for many insufficient aspects of the mental health program and greatly inhibits SCDC's ability to provide effective services to its mentally ill population."  And, "[I]nadequate mental health staffing at all levels within

---

> Psychiatric Disorder, or any other condition that results in significant functional impairment including inability to perform activities of daily living, extreme impairment of coping skills, or behaviors that are bizarre and/or dangerous to self or others.

Baxley Order, pp. 1-2.

SCDC represents a substantial risk of serious harm to inmates with serious mental illness." Baxley Order, pp. 23-25.

       d)     Judge Baxley found, "[T]he recordkeeping system at SCDC is outmoded, poorly maintained, and not readily accessible to all staff." And, "SCDC's failure to maintain accurate and complete mental health treatment records represents a substantial risk of serious harm to mentally ill inmates." Baxley Order, p. 26.

       e)     Judge Baxley found the SCDC's "failure to appropriately supervise, evaluate, and dispense psychotropic medications creates a substantial risk of serious harm to inmates with serious mental illness." Baxley Order, pp. 27-28.

       f)     Judge Baxley found "that SCDC's suicide prevention and crisis intervention practices create a substantial risk of serious harm to seriously mentally ill inmates." Baxley Order, pp. 28-31.

45)     Judge Baxley made the following factual findings regarding the subjective component of the deliberate indifference standard, which "requires proof that SCDC knew Plaintiffs were exposed to a substantial risk of serious harm but failed to take reasonable measures to abate the risk," Baxley Order, p. 32 (citing *Farmer*, 511 U.S. at 847):

       a)     "The evidence is overwhelming that SCDC has know for aver a decade that its system exposed seriously mentally ill inmates to a substantial risk of serious harm." SCDC's knowledge resulted from:

             i)     Dr. Patterson's 2000 report noting SCDC's mental heath program was in "profound crisis."

ii)      An October 2000 Joint Legislative Proviso Committee report concluding that "inmates with mental illness are not receiving adequate treatment . . . and oftentimes leave prisons worse off that when they entered."

iii)      An April 2003 Task Force report concluding Gilliam Psychiatric Hospital was "clearly inadequate."

iv)      A May 2003 South Carolina Department of Mental Health report concluding, "The lack of psychiatric coverage has resulted in a critical situation, with extremes of poor care, inhumane treatment, and dangerousness."

v)      "In September 2003, SCDC Director Jon Ozmint, in an application for technical assistance, stated that '[t]he current plight of persons with mental illness at SCDC is at a critical level.'"

vi)      The June 2005 complaint in *TR et al. v. SCDC*.

vii)      Expert reports issued by the Plaintiff's experts in *TR et al. v. SCDC* from 2006 to 2010.

viii)      An October 2007 letter from SCDC psychiatrist Dr. Michael Kirby to his supervisor "noting several serious problems with SCDC's mental health system."

ix)      A June 2008 report by SCDC investigator Lloyd Greer regarding the death of Jerome Laudman at the RHU at Lee CI.

x)      "In January 2010, a United States Department of Justice report was highly critical of SCDC's medication management and administration practices."

xi)      "SCDC's own counselor audits from 2010-2011 revealed numerous unsatisfactory practices with major deficiencies."

xii)    "January 2012 internal data showed counselor-to-patient ratios at many SCDC facilities were excessively high."

xiii)    "[T]hrough the discovery process in the litigation of [*TR et al. v. SCDC*] from 2005-2012, SCDC was made aware of the serious allegations raised by Plaintiffs and their experts, many of which are supported by SCDC's own records." Baxley Order, pp. 32-33.

b)    Judge Baxley expressly found, "SCDC knows and has known, since before [*TR et al. v. SCDC*] was filed, and persisting thereafter until the time of trial and even to the present date [of the Baxley Order], that its mental health program is systemically deficient and exposes seriously mentally ill inmates to a substantial risk of serious harm." Baxley Order, p. 33.

c)    Judge Baxley further found:

> The evidence shows that from 1999 until the filing of [*TR et al. v. SCDC*] in 2005, SCDC did virtually nothing to address, much less eliminate, the substantial risk of serious harm to which class members were exposed. What limited action SCDC has taken since the filing of this lawsuit has had little to no effect in abating the unconstitutional deficiencies this Court has found."

Baxley Order, pp. 33-34.

46)    Judge Baxley set for an extensive list of remedies SCDC must undertake in order to address the constitutional violations. Baxley Order, pp. 35-44.

47)    In reaching his conclusions, Judge Baxley made several findings that are relevant to this complaint, including:

a)    "[M]ultiple deaths" have occurred at SCDC because of SCDC's failure to take reasonable steps to ensure the safety of inmates with mental illness.

b)      Judge Baxley found that SCDC knew that risk factors for psychosis and suicide increase while an inmate is housed in restrictive units.

c)      Judge Baxley also found that evidence showed that conditions in SMU's fall below "what is acceptable for a 21st century correctional institution.  SMU cells are both extremely cold and inordinately filthy, often with the blood and feces of previous occupants smeared on the floors and walls."

### FOR A FIRST CAUSE OF ACTION
*Against MedFirst Staffing, LLC and all Defendants in Their Individual Capacities, For Deprivation of Rights under the Eighth and Fourteenth Amendments and 42 U.S.C. §1983.*

49)      The Plaintiff incorporates herein all relevant allegations in the foregoing paragraphs.

50)      Defendants have an affirmative duty to seek medical attention to persons who are in their care.

51)      Defendants Sgt. James Austin, Ivan Daly, Sgt. Bernice Brown, Jessica Brown, Christopher Nobles, Cpl. Lavern Hickson, Candi Nicole Bowen, Dr. Beverly Wood, Lt. Lavern Epps, Kimberly Woodward, Tonya Hubbard, and Elizabeth Brown all had knowledge that Victor Rogers was suffering a medical emergency but did nothing to help him.

52)      Defendants Sgt. James Austin, Ivan Daly, Sgt. Bernice Brown, Jessica Brown, Christopher Nobles, Cpl. Lavern Hickson, Candi Nicole Bowen, Dr. Beverly Wood, Lt. Lavern Epps, Kimberly Woodward, Tonya Hubbard, and Elizabeth Brown, additionally were in the immediate vicinity and were aware that Victor Rogers was experiencing extreme physical pain, but took no action to provide or request medical care for Rogers, disregarding the obvious risk to his health.

53) Because of the Baxley Order, defendants Bryan Stirling, Lefford Fate, Kennard Dubose, and Beverly Wood, had knowledge of the deficient mental health programs at the SCDC. These defendants also had knowledge of deficient mental health programs in the RHU at Lee CI. As administrators, these defendants had and affirmative duty to implement the remedial measures required by the Baxley Order. Just as administrators at SCDC failed to take action to remedy the serious deficiencies in the mental health program prior to the Baxley Order, these defendants failed to take action to remedy the serious deficiencies in the mental health program following the Baxley Order

54) The conduct and actions of the defendants, acting under color of law, in failing to request or obtain medical attention for Rogers, was unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for Rogers's serious medical needs, and caused specific and serious physical and emotion pain and suffering in violation of Rogers's substantive due process rights guaranteed under 42 U.S.C. 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

56) As a direct and proximate result of the foregoing, Victor Rogers suffered and died.

### FOR A SECOND CAUSE OF ACTION
*Against Defendants Bryan Stirling, Lefford Fate, Kennard Dubose, and Beverly Wood, In their Official Capacities, For Deprivation of Rights under the Eighth and Fourteenth Amendments and 42 U.S.C. §1983.*

57) The Plaintiff incorporates herein all relevant allegations in the foregoing paragraphs.

58) These defendants as supervisors at the SCDC with decision making authority regarding policy and procedures for SCDC's mental health treatment program, failed to establish

a constitutional regime of training, supervision, and/or discipline that would assure the SCDC's compliance with the constitutional duty to provide mental health treatment.

59)     These Defendant's actions were consciously indifferent and deliberately indifferent to the Plaintiff and decedent during his incarceration in the following particulars:

a)     In engaging in a pattern and practice of failing to provide reasonable necessary medical treatment to inmates and in failing to correct the practice, which continuously harmed others;

b)     In engaging in a pattern and practice of failing to provide reasonable and necessary medical care and/or treatment of inmates/detainees;

c)     In engaging in a pattern and practice of failing to provide the appropriate booking and/or screening procedure regarding inmates/detainees to properly determine their medical needs;

d)     In engaging in a pattern and practice of failing to perform appropriate investigations of deaths occurring in SCDC and Lee Correctional Institution;

e)     In engaging in a pattern and practice of conspiring to cover up facts surrounding deaths, which have occurred in SCDC and in particular at the Lee Correctional Institution;

f)     In engaging in a pattern and practice of not conducting the proper mental examinations and in failing to recognize the need for patients and/or inmates to be assessed and/or committed;

g)     In engaging in a pattern and practice of using and/or alleging inappropriate disciplinary measures and excessive force regarding inmates including the decedent; and,

h)      In engaging in a pattern and practice of transferring inmates (including the decedent) to the RHU who have mental health problems.

60)     As a direct and proximate result of the foregoing, Victor Rogers suffered and died.

## FOR A THIRD CAUSE OF ACTION
### For Negligence, Gross Negligence, and Survival

45)     The Plaintiff incorporates herein all relevant allegations in the foregoing paragraphs.

46)     The SCDC and MedFirst Staffing, LLC, and their agents and employees owed a duty of care to Victor Rogers.

47)     The above set forth incident and Victor roger's resulting injuries and death were proximately caused by the negligent, grossly negligent, reckless, willful and wanton acts of the SCDC and MedFirst Staffing, LLC in the following particulars:

a)      As to SCDC as an institution:

i)      Failing to provide medical assistance to Victor Rogers;

ii)     Housing the mentally ill in restricted housing units;

iii)    Failing to provide that mentally ill inmates receive medical and psychiatric treatment;

iv)     Failing to have policies and procedures in place so that when a mentally ill inmate misses an appointment, a follow up appointment is scheduled; and

v)      Failing to have a system in place so that when an inmate is discovered to be "too weak" to attend a mental health appointment, the inmate will receive medical assistance.

b)    As to MedFirst Staffing, LLC as an institution:

    i)    Not properly training nurses to perform their duties;

    ii)    Failing to train their nurses about the standard of care applicable in a correctional setting; and

    iii)    Failing to train their staff regarding care for the mentally ill.

48)    These defendants knew or should have known that the acts or omissions of their agents were dangerous, negligent, grossly negligent, or in contravention of the policies and expectations of the SCDC.

## FOR A FOURTH CAUSE OF ACTION
### For Negligence, Gross Negligence, and Wrongful Death

49)    The Plaintiff incorporates herein all relevant allegations in the foregoing paragraphs.

50)    During all times material to the claims herein, Defendants acts and omissions amounted to negligence, gross negligence, recklessness, and a willful and wanton disregard for the safety and wellbeing of Victor Rogers. The reckless, willful and wanton acts of these Defendants include, but are not limited to, those set forth in the foregoing paragraphs.

51)    As a direct and proximate result of the grossly negligent acts, omissions, willful and wanton conduct of the Defendant, the deceased's family has been damaged and suffered as follows:

a)    Extreme mental shock and suffering;

b)    Extreme wounded feelings;

c)    Tremendous grief and sorrow;

d)    Loss of friendship and companionship;

e)    Loss of a son and brother; and

f)    Deprivation of the use and comfort of the Victors' society, knowledge, friendship, judgment and experience.

52)    As a further result and because of the Defendant's reckless, willful and grossly negligent conduct, which ultimately caused the wrongful death of Victor Rogers, this Plaintiff is entitled to actual and consequential damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

**FOR A FIFTH CAUSE OF ACTION**
**For Intentional Infliction of Emotional Distress**

53)    Plaintiff incorporates by reference the allegations of the original Complaint as though set forth herein.

59)    Defendants engaged in, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Victor Rogers who died of an untreated kidney infection that made him too weak to walk at least seven (7) days before he died.

60)    As a proximate result of the acts alleged herein Victor Rogers suffered severe or extreme emotional distress, entitling Plaintiff to damages in an amount to be proven at trial.

**FOR A SIXTH CAUSE OF ACTION**
**For Conscious Pain and suffering**

61)    Plaintiff incorporates by reference the allegations of the original Complaint as though set forth herein.

62)    Defendants directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, conscious pain and suffering to Victor Rogers.

63)     As a proximate result of the acts alleged herein Victor Rogers suffered conscious pain and suffering, entitling him to damages in an amount to be proven at trial

**For a Seventh Cause of Action**
**For Violation of Title II of the Americans With Disabilities Act, 42 U.S.C. 12132, *et seq*.**

64)     Plaintiff incorporates by reference the allegations of the original Complaint as though set forth herein.

65)     The Defendant SCDC was acting by and through its employees, Correctional Officers, Administrators, Directors and Supervisors, Medical Personnel and as such had special duties imposed upon them with regard to Victor Rogers.

66)     Title II of the Americans with Disabilities Act prohibits discrimination against persons with disabilities by "public entities." The SCDC operating Lee CI is a public entity as defined by the Act.

67)     Additionally, in accordance with the Act, no qualified individual with a disability shall by reason of such disability be excluded from participation or be denied the benefits of the services, programs or actions of the public entity.

68)     A "disability" as defined by the Act means an individual who has a physical or mental impairment that substantially limits one or more major life activity of such individual. Prior to the incident in question, the decedent had been diagnosed as having significant mental health disease including mental retardation, bi-polar disorder, and paranoid schizophrenia.

69)     The Plaintiff is informed and believes that the decedent was a qualified individual with a disability, was excluded from participation in and denied medical services and was discriminated against, and such denial of benefits and discrimination was by reason of decedent's disability.

70)     The Plaintiff is further informed and believes that as a direct result of the above-mentioned discrimination Victor Rogers suffered injuries and died.

71)     The Plaintiff is informed and believes the Estate of Victor Rogers is entitled to actual, consequential, and punitive damages against the Defendant SCDC, pursuant to their violation of 42 U.S.C. 12132, *et seq*.

## DAMAGES

72)     The Plaintiff incorporates herein all relevant allegations in the foregoing paragraphs.

73)     As a direct and proximate result of the negligence, gross negligence, recklessness, willfulness and wantonness of the Defendants herein, Plaintiff suffered grievous injury that caused his death.

74)     In accordance with South Carolina Code Ann. 15-5-90, and as a direct result of the Defendants' negligence and gross negligence, Plaintiff (Mother), individually and as Personal Representative of the Estate of her Son, have incurred the following:

       a.  Grief and Sorrow;

       b.  Loss of companionship;

       c.  Mental shock and suffering;

       d.  Deprivation of the use and comfort of Plaintiff's society;

       e.  Loss of Plaintiff's experience, knowledge, and judgment in managing his affairs;

       f.  Loss of earnings;

       g.  Loss of Plaintiff's economic services;

       h.  Funeral and burial expenses;

       i.  Punitive Damages; and

       j.  Other damages yet to be determined.

WHEREFORE, the plaintiff, Pamela Stroud, prays for this Court to grant the following relief:

a.  Enter a judgment in favor of her against all defendants, jointly and severally, on all counts;

b.  Award compensatory damages to her against the defendants, jointly and severally, in an amount to be determined at trial;

c.  Award punitive damages to her and against all defendants, jointly and severally, in an amount to be determined at trial, in order that such award will deter similar illicit conduct by Defendants and other officials in the future;

d.  Award to her and against defendants pre-judgment and post-judgment interest on all sums awarded him in this matter

e.  Award attorney's fees.

f.  Award costs of this action.

g.  Award such other and further relief this Court deems just and proper.

Respectfully submitted,

By:  /s/ *E. Charles Grose, Jr.*

ELIZABETH FRANKLIN-BEST
Elizabeth Franklin-Best, P.C.
Federal I.D. 9969
900 Elmwood Avenue, Ste. 101
Columbia, South Carolina 29201
(803) 765-1044
elizabeth.a.franklin@gmail.com

E. CHARLES GROSE, JR.
The Grose Law Firm, LLC
Federal I.D. 6072
400 Main Street
Greenwood, South Carolina 29646
(864) 538-4466
Charles@groselawfirm.com

JAMES H. "CHIP" PRICE, III
Federal I.D. 3152
The Price Law Firm
644 E. Washington Street
Greenville, South Carolina 29601
(864) 271-3535
chip@price-law-firm.com

***Attorneys for the Plaintiff***

August 22, 2016.